# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Kelly L. Stephens
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: March 26, 2024

Mr. John Thomas Below
Bodman
201 W. Big Beaver Road
Suite 500
Troy, MI 48084

Mr. Brent N. Coverdale
Dunn & Davison
1100 Walnut Street
Suite 1950
Kansas City, MO 64106

Mr. Steven John Winkelman
Equal Employment Opportunity Commission
131 M Street, N.E.
Washington, DC 20002

Re:  Case No. 23-1719, *EEOC v. Ferrellgas, L.P.*
Originating Case No. : 2:23-mc-50094

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely
Deputy Clerk

cc: Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0064p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Applicant-Appellee,*

*v.*

FERRELLGAS, L.P.,

*Respondent-Appellant.*

No. 23-1719

―――――――――――

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:23-mc-50094—Stephen J. Murphy III, District Judge.

Decided and Filed: March 26, 2024

Before: BOGGS, MOORE, and GIBBONS, Circuit Judges.

―――――――――――

## COUNSEL

**ON BRIEF:** Brent N. Coverdale, SCHARNHORST AST KENNARD GRIFFIN, PC, Kansas City, Missouri, John T. Below, BODMAN PLC, Troy, Michigan, for Appellant. Steven Winkelman, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellee.

―――――――――――

## OPINION

―――――――――――

JULIA SMITH GIBBONS, Circuit Judge. Ferrellgas, L.P., appeals the district court's order enforcing an Equal Employment Opportunity Commission subpoena. Because the district court did not abuse its discretion in enforcing the subpoena, we affirm.

I.

Ferrellgas[1] is a retail distributor of propane gas and related equipment. As relevant here, Ferrellgas maintains the following corporate structure:



In January 2020, April Wells filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging that Ferrellgas hired her for a lesser position than her qualifications warranted, paid her less than her male coworkers, and fired her from her job as a driver because of her sex. Wells later amended her charge to allege that Ferrellgas also discriminated against her because she is Black.

In accordance with its responsibilities under Title VII of the Civil Rights Act of 1964, the EEOC sent Ferrellgas two requests for information ("RFIs"). *See* 42 U.S.C. § 2000e-5(b). Although Wells named Ferrellgas Partners, L.P., as her employer in her discrimination charge, the EEOC addressed its RFIs to Ferrellgas, Inc. Nevertheless, Ferrellgas responded to both RFIs — first through a human resources employee and then through outside counsel. In both replies, Ferrellgas provided some responsive documents but maintained objections to the scope of the EEOC's requests. Neither response objected to the EEOC's use of "Ferrellgas, Inc.," nor gave any indication that Ferrellgas, Inc., lacked dominion over responsive documents or information. And neither the responding employee nor Ferrellgas's outside counsel indicated which of the

---

[1] We employ "Ferrellgas" to refer collectively to Respondent Ferrellgas, L.P., and its related entities, Ferrellgas Partners, L.P., and Ferrellgas, Inc.

three Ferrellgas entities employed them.[2] In response to the second RFI, Ferrellgas's outside counsel requested that "all further communications regarding this matter . . . be directed to [his] firm." DE 7–10, Ferrellgas Response to RFI No. 2, Page ID 126.

The EEOC's investigation continued over the next twenty-one months. In December 2021, the EEOC served Ferrellgas with a subpoena by mailing it to Ferrellgas's outside counsel. Ferrellgas responded, leveling several objections to the subpoena's breadth and burdensomeness but at the same time providing some responsive information. Ferrellgas did not object to the EEOC's manner of service.

A few months later, the EEOC sent Ferrellgas a third RFI, transmitting the request to the same human resources employee who had responded to its initial RFI. This time, Ferrellgas refused to provide any of the requested documentation. And in its response, Ferrellgas again requested that all communications from the EEOC be directed to its outside counsel.

In October 2022, the EEOC served Ferrellgas with a second subpoena — addressed to "Ferrellgas, Inc." — by mailing the subpoena to Ferrellgas's outside counsel and uploading the subpoena to the EEOC's online portal.[3] Two weeks later, Ferrellgas responded through outside counsel, refusing to provide any of the requested information on grounds of overbreadth and undue burden. Ferrellgas's outside counsel also observed that the subpoena was unsigned and indicated that Ferrellgas was "not aware of any . . . certified mailing." DE 2-4, Ferrellgas Response to Oct. 2022 Subpoena, Page ID 33.

The following month, the EEOC re-issued its October subpoena. A near replica of the original subpoena, the Commission's November subpoena differed only in that it was dated November 2, 2022, and signed by Deanna Wooten, the Enforcement Manager for the EEOC's Detroit office, on behalf of the EEOC's Detroit District Director. The response date specified in the November subpoena remained October 25, 2022, and the EEOC again served the subpoena

---

[2]In separate email communications with an EEOC investigator, the Ferrellgas employee's email signature reflected that Ferrellgas, L.P., employed her as a Senior Human Resource Generalist.

[3]Both Ferrellgas and its outside counsel had previously used the EEOC's online portal to transmit documents to the EEOC.

by uploading it to the EEOC's online portal and sending a copy by certified mail to Ferrellgas's outside counsel.[4]

Consistent with its response to the October subpoena, Ferrellgas refused to provide any responsive documents. Without formally petitioning the Commission for the subpoena's revocation or modification, Ferrellgas's outside counsel referred the EEOC to Ferrellgas's earlier response, indicating that the company still "object[ed] to the [Subpoena's] current scope." DE 2-3, Coverdale Email to EEOC, Page ID 31.

In January 2023, the EEOC applied for an order to show cause why the November 2022 subpoena should not be enforced under Section 710 of Title VII, 42 U.S.C. § 2000e-9. The district court granted the application and directed Ferrellgas to respond. Ferrellgas responded, and roughly four-and-a-half months later, the district court ordered that the subpoena be enforced. Ferrellgas timely appealed.

## II.

We review the district court's decision to enforce the EEOC's subpoena for abuse of discretion. *McLane Co., Inc. v. EEOC*, 581 U.S. 72, 85 (2017); *EEOC v. Roadway Express, Inc.* (*Roadway Express II*), 261 F.3d 634, 638 (6th Cir. 2001). Under this highly deferential standard, we disturb the district court's judgment only if it "relie[d] on clearly erroneous findings of fact, applie[d] the wrong legal standard, misapplie[d] the correct legal standard when reaching a conclusion, or ma[de] a clear error of judgment." *Cole v. City of Memphis*, 839 F.3d 530, 540 (6th Cir. 2016) (citation omitted). To warrant reversal, the district court's mistake must "affect[] substantial rights and amount[] to more than harmless error," *Himes v. United States*, 645 F.3d 771, 782 (6th Cir. 2011) (quoting *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009)).

---

[4]The certified-mail return receipt indicates that counsel received the subpoena on December 7, 2022.

### III.

### A.

Title VII bars employers from discharging or refusing to hire employees on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). When an individual files a sworn charge of employment discrimination with the EEOC, the Act "obligates the Commission to investigate [the charge] to determine whether there is 'reasonable cause to believe that the charge is true.'" *Univ. of Pa. v. EEOC*, 493 U.S. 182, 190 (1990) (quoting 42 U.S.C. § 2000e-5(b)). In furtherance of this investigatory mandate, Title VII arms the Commission with "a broad right of access to relevant evidence," *id.* at 191, instructing that "the Commission . . . shall . . . have access to . . . any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by" Title VII and "is relevant to the charge under investigation," 42 U.S.C. § 2000e-8(a).

The EEOC's right of informational access includes the authority to issue subpoenas duces tecum seeking relevant documents and information. 42 U.S.C. § 2000e-9 (incorporating 29 U.S.C. § 161). An employer may petition the EEOC to revoke such a subpoena, "but if the EEOC rejects the petition and the employer still refuses to obey . . . , the EEOC may ask a district court to issue an order enforcing it." *McLane*, 581 U.S. at 76 (cleaned up) (quoting 29 U.S.C. § 161(2)).

"A subpoena enforcement proceeding is a summary process designed to decide expeditiously whether a subpoena should be enforced." *EEOC v. United Parcel Serv., Inc.*, 859 F.3d 375, 378 (6th Cir. 2017) (quoting *EEOC v. Roadway Express, Inc.* (*Roadway Express I*), 750 F.2d 40, 42 (6th Cir. 1984)). The reviewing court's limited role is not "to determine 'whether the charge of discrimination is 'well founded' or 'verifiable,'" but instead to "satisfy itself that the charge is valid and that the material requested is 'relevant' to the charge." *Univ. of Pa.*, 493 U.S. at 191 (quoting *EEOC v. Shell Oil*, 466 U.S. 54, 72 n.26 (1984)). If so, the court "should enforce the subpoena unless the employer establishes that the subpoena is 'too indefinite,' has been issued for an 'illegitimate purpose,' or is unduly burdensome." *McLane*, 581 US. at 77 (quoting *Shell Oil*, 466 U.S. at 72 n.26); *see also EEOC v. Ford Motor Credit Co.*,

26 F.3d 44, 45 (6th Cir. 1994) ("An EEOC administrative subpoena may be judicially enforced only if it: (1) seeks relevant information; (2) is not unduly burdensome; and (3) is within the statutory authority of the EEOC.").

## B.

The district court found that Wells's charge is facially valid, and Ferrellgas does not dispute that finding. Instead, Ferrellgas challenges the Commission's subpoena on four other grounds — two procedural and two substantive. None of its objections prove meritorious.

## 1.

Ferrellgas first contends that the subpoena is unenforceable because it was improperly served. Title VII authorizes the Commission to serve subpoenas in the same manner as the National Labor Relations Board serves process under the National Labor Relations Act. 42 U.S.C. § 2000e-9 (incorporating 29 U.S.C. § 161). That statute provides:

> Complaints, orders, and other process and papers of the Board, its member, agent, or agency, may be served either personally or by registered or certified mail or by telegraph or by leaving a copy thereof at the principal office or place of business of the person required to be served.

29. U.S.C. § 161(4). Ferrellgas argues that, under § 161(4), the EEOC cannot serve a subpoena by posting it to the Commission's online portal or by mailing it to counsel. Instead, Ferrellgas argues, the Commission was required to either mail the subpoena to Ferrellgas itself or employ one of the other methods set forth in the Act.

We reject this argument for several reasons. At the outset, we view Ferrellgas's contention skeptically. Ferrellgas earlier complied with a subpoena served in the same manner it now contests. And despite objecting to that subpoena's substance, Ferrellgas previously expressed no objection to the process it received.

Relatedly, we hesitate to treat the Commission's subpoenas as "an invitation to a game of hare and hounds," in which the subject must comply "only if cornered at the end of the chase." *NLRB v. Strickland*, 321 F.2d 811, 813 (6th Cir. 1963). "[W]ould-be process servers are not entirely at the mercy of elusive defendants," and here, where Ferrellgas twice instructed the

Commission to direct future communications to its outside counsel, it cannot now defeat service of process by claiming that the Commission erred in following its explicit request.  *NLRB v. Clark*, 468 F.2d 459, 464 (5th Cir. 1972) (service at respondent's former business address proper under § 161(4) where "to all possible outward appearances" and by the respondent's "own doing" the former address was "still [respondent]'s 'principal place of business'" (quoting § 161(4))).  To hold otherwise would reward duplicity and allow potential defendants to easily avoid the Commission's subpoenas.  What is more, it would "create a rule that would allow a lawyer with actual notice of a subpoena to take no action, in hope that the [Commission] will not seek enforcement, and to make objections only if enforcement proceedings ensue."  *NLRB v. Fresh & Easy Neighborhood Mkt., Inc.*, 805 F.3d 1155, 1162 (9th Cir. 2015).  Either result would defeat "[t]he evident Congressional purpose in enacting [29 U.S.C. § 161(4)]" — that is, "to enable the NLRB to serve complaints and other papers by registered mail."  *Clark*, 468 F.2d at 464.

Finally, we reject Ferrellgas's interpretation of § 161(4) on its face.  The statute is silent as to whether service by registered or certified mail requires delivery to the respondent himself, and this court has previously endorsed the view that an NLRB subpoena served by registered mail need not be delivered directly to the subpoenaed individual to satisfy § 161(4).  *NLRB v. Strickland*, 220 F. Supp. 661, 666 (W.D. Tenn. 1962) (finding § 161(4) satisfied where NLRB mailed subpoena to respondent's office and respondent did not sign for the mailing), *aff'd*, 321 F.2d 811, 813 (6th Cir. 1963).  We have elsewhere endorsed the principle that when "[a]ctual notice reached counsel promptly and counsel responded on the merits," service not in strict conformity with the NLRB's regulations does not preclude a district court's enforcement of a Board subpoena.  *NLRB v. Cincinnati Bronze, Inc.*, 811 F.2d 607, 607 (6th Cir. 1986) (per curiam) (table disposition); *see also NLRB v. Playskool, Inc.*, 431 F.2d 518, 520 (7th Cir. 1970) (per curiam) (enforcing subpoenas duces tecum despite flawed service because "[n]o prejudice ha[d] been shown to have resulted").  We see no reason why similar principles should not apply to the EEOC's subpoenas.[5]  *Cf. EEOC v. C & P Tel. Co.*, 813 F. Supp. 874, 875 n.1 (D.D.C.

---

[5]We find Ferrellgas's reliance on Fed. R. Civ. P. 45 and cases that cite to that Rule unpersuasive.  Whether Rule 45 requires personal service of subpoenas is of little moment in this case, because the advisory committee notes to Rule 45 state that the Rule "does not apply to the enforcement of subpoenas issued by administrative officers and

1993) ("Because respondents knew of the subpoena, the EEOC's manner of service, even if technically defective, constitutes substantial compliance."). Ferrellgas instructed the Commission to send communications to its attorney, and its attorney received actual notice of the Commission's mailed subpoena; these facts suffice to demonstrate adequate service of process under § 161(4). *Cf. Strickland*, 321 F.2d at 813.[6]

2.

Ferrellgas next challenges the Commission's subpoena as facially invalid, arguing that it failed to comply with the Commission's procedural rules. We reject this argument on similar grounds.

The Commission's regulations provide that a subpoena

> shall state the name and address of its issuer, identify the person or evidence subpoenaed, the person to whom and the place, date, and the time at which it is returnable or the nature of the evidence to be examined or copied, and the date and time when access is requested.

29 C.F.R. § 1601.16(a). Here, Ferrellgas correctly observes that the EEOC's subpoena (1) lists a response deadline that predates the subpoena's issuance and (2) names "Ferrellgas, Inc.," as the subpoenaed party rather than Ferrellgas Partners, L.P., (whom Wells charges discriminated against her) or Ferrellgas, L.P., (the respondent identified in the EEOC's application to enforce its subpoena). So, at a surface level, the Commission issued a subpoena with an invalid response date and now seeks court enforcement of that subpoena against an entity that was not, strictly speaking, the target of the subpoena itself. These technical oversights are blameworthy, and the Commission should have rectified them well before this juncture. *Cf. EEOC v. Kimberly-Clark*

---

commissions pursuant to statutory authority." Fed. R. Civ. P. 45 advisory committee note (1937); *see also Goodyear Tire & Rubber Co. v. NLRB*, 122 F.2d 450, 451 (6th Cir. 1941) (citing advisory committee notes); *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 477 (4th Cir. 1986) (same). *But see United States v. Tenn. Walking Horse Breeders' & Exhibitors' Ass'n*, 727 F. App'x 119, 124 (6th Cir. 2018) ("[A]lthough Rule 45 does not apply directly to administrative subpoenas, Rule 81 makes clear that district courts have discretion to apply the federal rules generally to proceedings to enforce administrative subpoenas.").

[6]To the extent the district court may have failed to address the EEOC's manner of service, we find any such error harmless. *See Himes*, 645 F.3d at 782.

*Corp.*, 511 F.2d 1352, 1360 (6th Cir. 1975) ("The EEOC should, of course, follow its own procedures[.]").

But "it would exalt form over substance" to force the Commission to issue a new subpoena, entertain Ferrellgas's substantive objections, and then apply for enforcement of the new subpoena in the district court, "all to bring us back to where we are now." *United States v. Ritchie*, 15 F.3d 592, 600 (6th Cir. 1994) (nonprejudicial errors in administrative procedures mandated by Internal Revenue Code 7609(f) concerning IRS's "John Doe" summonses not fatal to the summons), *cert. denied*, 513 U.S. 868 (1994). Ferrellgas made no effort to clarify or seek correction of the subpoena's stale response deadline, and Ferrellgas's subsequent conduct demonstrates that it intended to defy the subpoena even if the response date had been valid. Moreover, the Commission has not yet determined whether it possesses reasonable cause to believe Wells's allegations and, if so, which Ferrellgas entity would prove a suitable defendant in a civil enforcement action. Indeed, identifying the charging individual's de facto employer is one (implied) purpose of the Commission's investigation. *See Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992–93 (6th Cir. 1997) (discussing alternative theories under which an entity may qualify as an individual's employer). We thus cannot wholly condemn the Commission's procedural lapses.

More to the point, however, the EEOC's errors did not prevent Ferrellgas from raising its substantive objections to the subpoena before the Commission, the district court, or this panel. Kicking our inevitable consideration of those substantive objections several months down the road would contravene the summary nature of these proceedings and exact a needless tax on already limited judicial resources. *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'" (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969))). We find these considerations especially persuasive here, when the Commission's procedural errors did nothing to prejudice Ferrellgas's case on the merits. *See Smalley v. Comm'r of Soc. Sec.*, No. 20-1865, 2021 WL 4026783, at *4 (6th Cir. Sept. 3, 2021) (per curiam) ("[A]n agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived

of substantial rights because of the agency's procedural lapses." (quoting *Connor v. U.S. Civ. Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983))). Because Ferrellgas suffered no prejudice, the EEOC's noncompliance with 29 C.F.R. § 1601.16 constituted harmless error, and it did not preclude the district court from enforcing the subpoena.

3.

Before we reach Ferrellgas's substantive objections, we briefly address the EEOC's contention that Ferrellgas forfeited its right to challenge the subpoena's enforcement altogether. Section 11(1) of the National Labor Relations Act, from which the Commission's subpoena power derives, provides that:

> *Within five days* after the service of a subpena [sic] on any person requiring the production of any evidence in his possession or under his control, such person may petition the Board to revoke, and the Board shall revoke, such subpena [sic] if in its opinion the evidence whose production is required does not relate to any matter under investigation, or any matter in question in such proceedings, or if in its opinion such subpena [sic] does not describe with sufficient particularity the evidence whose production is required.

29 U.S.C. § 161(1) (emphasis added). The Fifth Circuit has interpreted § 161(1) to impose an administrative-exhaustion requirement on employers who seek to avoid enforcement of an EEOC subpoena, *see EEOC v. Cuzzens of Georgia, Inc.*, 608 F.2d 1062, 1064 (5th Cir. 1979) (per curiam), and the Seventh Circuit — in an unreported case — has interpreted the EEOC's implementing regulations to do the same, *see EEOC v. Aerotek, Inc.*, 498 F. App'x 645, 647–48 (7th Cir. 2013). *But see EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959, 962–67 (D.C. Cir. 1999) (addressing an employer's substantive objections to an EEOC subpoena despite the employer's failure to petition the Commission for revocation or modification). Citing these cases, the Commission asserts that by neglecting to formally petition the EEOC for the subpoena's revocation or modification, Ferrellgas failed to exhaust its available administrative remedies and thus forfeited its right to challenge the subpoena's enforcement in court.

This argument is not without merit. We have previously held that an employer could contest an NLRB subpoena in federal court, despite failing to petition the Board for its revocation under § 161(1), only because the employer challenged the subpoena on constitutional

grounds. *See NLRB v. Midland Daily News*, 151 F.3d 472, 474 (6th Cir. 1998). And Ferrellgas asserts no constitutional challenge here.

But *Midland*, *Aerotek*, and *Cuzzens* also appear distinguishable — none of those cases addressed exhaustion of administrative remedies in light of an employer's allegation that the EEOC (or the NLRB) failed to properly serve a facially valid subpoena. It is self-evident, Ferrellgas argues, that an employer's obligation to exhaust its administrative remedies under § 161(1) and 29 C.F.R. § 1601.16(b)(1), if it exists at all, is contingent upon proper service of a subpoena that complies with the statute and its implementing regulations. This argument carries considerable logical force, and we find support for it in our caselaw. *See Vokas Provision Co. v. NLRB*, 796 F.2d 864, 874 (6th Cir. 1986) ("[A] person is under a duty to obey a subpoena only when that person has been validly served."); *Strickland*, 321 F.2d at 814 ("[T]he obligation of a witness to testify in response to a subp[o]ena is conditional upon being 'properly summoned.'" (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950))). *But see Fresh & Easy*, 805 F.3d at 1162–64 (applying administrative-exhaustion requirement to EEOC subpoena despite technically flawed service). So while the Commission points to compelling precedent from outside our circuit, we are not bound to adopt an administrative-exhaustion requirement under the present circumstances. *See Lutheran Soc. Servs.*, 186 F.3d at 963 ("[C]ourts may exercise their traditional authority to hear issues not presented to the agency if the circumstances surrounding noncompliance with agency procedures are sufficiently compelling."). We therefore turn to Ferrellgas's substantive objections.

4.

Ferrellgas substantively objects to the Commission's subpoena as overbroad and unduly burdensome. The subpoena is overbroad, Ferrellgas argues, because while Wells's charge implicates the company's *pay* and *termination* practices, the subpoena seeks information concerning Ferrellgas's *hiring* practices — a wholly different topic. The subpoena is unduly burdensome, Ferrellgas claims, because the "file retrieval costs, copying costs, and employee time spent complying with the EEOC's requests, would be in excess of normal operating costs and present a great burden." CA6 R. 13, Appellant Br., at 25.

The district court did not abuse its discretion in rejecting these arguments. "Although the relevancy standard [in 42 U.S.C. § 2000e-8(a)] places some limitation on the scope of the EEOC's investigative authority, courts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer." *United Parcel Service*, 859 F.3d at 378 (cleaned up) (quoting *Roadway Express II*, 261 F.3d at 639). Accordingly, the Commission need not limit its investigation to a "review [of] evidence concerning the specific charge[s]" at hand. *Id.* (quoting *Roadway Express I*, 750 F.2d at 43). Instead, even evidence concerning patterns of race- or sex-based discrimination "in job classifications or hiring situations other than those that the EEOC's charge specifically targeted" may prove relevant. *Roadway Express II*, 261 F.3d at 639 (citing *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355, 358 (6th Cir. 1969)).

Ferrellgas's relevancy objection fails in two respects. First, the record supports the district court's conclusion that Wells charged discrimination not only in Ferrellgas's pay and termination practices, but also in its hiring decisions. Wells alleges that when she interviewed for the service technician role, Ferrellgas's representatives all but outright told her that they would not hire a woman — twice informing Wells that the position was "a man's job" and at one point asking her if her husband was available to take the job instead. DE 7-2, Charge, Page ID 86. Wells further alleges that, although she was qualified for the service technician position, the company ultimately hired her as a driver because "they have hired women [service technicians] in the past and it never worked out." *Id.* To be sure, Wells's charge lacks the magic words "discriminatory hiring." But the Commission's regulations do not hold complaining individuals to the requirements of artful legal pleading; they demand only that the charge provide information sufficient "to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b); *see also EEOC v. UMPC*, 471 F. App'x 96, 100 (3d Cir. 2012) ("[T]he charge does not need to contain the legal theory under which the EEOC proceeds."); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970) ("In the context of a statute like Title VII it is inconceivable that a charging party's rights should be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations."). Wells's factual allegations encompass a discriminatory-hiring allegation, and the material that the Commission seeks — temporally- and geographically-limited information

No. 23-1719                    *EEOC v. Ferrellgas, L.P.*                    Page 13

regarding other individuals who applied for a driver position with Ferrellgas — is directly relevant to that charge.

Even if Wells had failed to allege discriminatory hiring, however, the requested material would still be relevant under the § 2000e-8(a) standard. The application and hiring information that the Commission seeks could cast light on whether Ferrellgas discriminated against other job applicants — in the same region and during the same timeframe as Wells's employment — based on sex or race. In turn, that information might illuminate whether Ferrellgas discriminated against Wells on those same bases but in other employment contexts — i.e., in her pay and termination. *See Roadway Express II*, 261 F.3d at 638 ("[E]vidence that an employer discriminated in one situation or employment position is relevant to a determination of whether the employer discriminated in other circumstances."); *Ford Motor Credit*, 26 F.3d at 47 ("[E]mployment context is relevant to a charge of employment discrimination."). So even if Ferrellgas were correct that Wells failed to allege discriminatory hiring, its relevancy objection would still fall short.

Ferrellgas's claim that the subpoena imposes an undue burden also fails. "[W]hether a subpoena is overly burdensome turns on the nature of the materials sought and the difficulty the employer will face in producing them." *McLane*, 581 U.S. at 81. Given its "fact-intensive" nature, the burdensomeness inquiry is "generally not amenable to broad *per se* rules." *Id.* (first quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 404 (1990), and then quoting *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008)). The employer bears the obligation to show that compliance would impose an undue burden. *Id.* at 77.

The sole evidence on which Ferrellgas relies to show undue burden is an unsigned, undated declaration. This is not a proper declaration under 28 U.S.C. § 1746, and we therefore decline to consider it.[7] *See Blount v. Stanley Eng'g Fastening*, 55 F.4th 504, 515 (6th Cir. 2022).

---

[7]Ferrellgas asserts that the EEOC forfeited any argument regarding the propriety of the Yendrek Declaration by failing to raise the issue below. But "[t]his court can affirm a decision of the district court on any grounds supported by the record, even if different from those relied on by the district court." *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999). And in any event, the Commission raised the issue at its earliest available opportunity. Ferrellgas submitted the unsigned declaration in response to the district court's order to show cause, and the district court did not provide for supplemental briefing or oral argument following Ferrellgas's submission.

Even if the declaration were properly before the court, however, we would find Ferrellgas's contentions unpersuasive. The declaration represents that a search for responsive records covered by the subpoena would require between 700 and 1500 employee hours that could otherwise be spent on normal operations. After that, Ferrellgas claims, a human resources employee would need to dedicate two full weeks of work to compile the records and review them for responsiveness.

Assuming these figures are true, Ferrellgas nevertheless fails to explain why they represent an undue burden. Assessing whether the burden of compliance is undue is a comparative exercise; what is unduly burdensome to a small business with a handful of employees may not be unduly burdensome to a Fortune 500 company. *Cf. Maryland Cup Corp.*, 785 F.2d at 479 (finding no undue burden where employer failed to show "that the cost of gathering [responsive] information is unduly burdensome *in the light of the company's normal operating costs*" (emphasis added)). While Ferrellgas's figures provide an estimate of the burden it might face, Ferrellgas offers up no baseline against which we can compare its estimates to decide whether the burden it faces is undue. Merely pointing out that compliance with the subpoena will divert employee attention from ordinary tasks is insufficient — if that were enough, then nearly every EEOC subpoena would fail. We are not blind to the fact that compliance with the Commission's subpoena will require significant time and effort, but without some metric of *how significant* that time and effort is, we cannot find that an employer has met its burden to show that compliance would be unduly burdensome. *See United States v. Chevron U.S.A., Inc.*, 186 F.3d 644, 649–50 (5th Cir. 1999) (finding no undue burden where the employer "offer[ed] no explanation . . . why, relative to [its] size, the compliance cost and effort 'unduly disrupt[ed] or seriously hinder[ed] normal operations'" (quoting *FTC v. Jim Walter Corp.*, 651 F.2d 251, 258 (5th Cir. 1981))). Accordingly, the district court did not abuse its discretion in finding that Ferrellgas faced no undue burden in complying with the subpoena.

IV.

For the foregoing reasons, we affirm.

---

The Commission's opening brief before this court, in which it raised the issue, was thus its first available opportunity to do so.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-1719

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Applicant - Appellee,

    v.

FERRELLGAS, L. P.,

    Respondent - Appellant.

> **FILED**
> Mar 26, 2024
> KELLY L. STEPHENS, Clerk

Before:  BOGGS, MOORE, and GIBBONS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

    THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

    IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____
Kelly L. Stephens, Clerk